# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOEL BORING | : CIVIL ACTION |
|---|---|
| v. | : NO. 19-1833 |
| STATE FARM FIRE AND CASUALTY COMPANY | : |

## MEMORANDUM

**KEARNEY, J.**  August 9, 2019

Joel Boring sues his home insurer State Farm Fire and Casualty Company for failing to pay what he perceives to be the full estimate of water damage resulting from a broken pipe in his house. He received, and accepted, partial payment for twenty to twenty-four feet of slab repair but claims State Farm's failure to pay for an additional fifteen to nineteen feet of slab repair breached his insurance policy and violated Pennsylvania statutes prohibiting bad faith insurance practices and the unfair trade practices. Mr. Boring concedes he purchased an insurance policy with an endorsement requiring State Farm to pay for repairing only those areas in the house necessary to access the specific defect in the appliance causing the water damage. Admitting he bought this endorsement, he now alleges the endorsement is unconscionable. He asks us to use unconscionability—a contract defense—to enforce the policy without the endorsement. Without citing an allegation, he now argues the challenged endorsement is ambiguous as to the meaning of "access" and thus cannot be enforced because it violates an insured's reasonable expectations.

State Farm moves to dismiss the Second Amended Complaint. In the accompanying Order, we grant State Farm's motion to dismiss Mr. Boring's third attempt to plead contract, bad faith or unfair trade practices claims but grant Mr. Boring one last leave to timely plead whether and which ambiguous language in the endorsement may allow him to proceed into discovery.

## I. Alleged facts

### *Mr. Boring's Policy with Endorsement*

Mr. Boring purchased a homeowners policy with State Farm to insure his home from November 16, 2017 to November 16, 2018 ("Policy").[1] The Policy covers losses "for accidental direct physical loss to the property ... except as [to]...Losses Not Insured."[2] The parties agreed State Farm would not insure losses caused by "continuous or repeated seepage or leakage of water or steam from a: (1) heating, air conditioning or automatic fire protective sprinkler system; (2) household appliance; or (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors; which occurs over a period of time. *If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance.*"[3]

This case involves State Farm's decision to not pay an entire estimated claim based on an endorsement to the Policy deleting the last sentence regarding tear out and replacement (highlighted above) with:

> "*13. Tear Out. If a Loss insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that appliance from which the water or steam escaped.* We will not cover the cost of repairing or replacing the system or appliance itself.[4]

2

### *Mr. Boring's claim and State Farm's timely payment.*

On September 10, 2018, Mr. Boring suffered water damage to his home after an "escape of water from within the home's [sic] plumbing system" requiring access to a kitchen drain line under the kitchen floor for repair, a covered loss under the Policy.[5] Mr. Boring promptly reported the loss to State Farm.[6]

Mr. Boring's plumber estimated the cost to replace the broken kitchen drain line running under the slab floor of his home from the kitchen sink to the main drain, located thirty-five to forty feet away, as well as demolition, excavation, backfill, and rough slab repair to be $8,900.[7] Of the total estimated cost, $400 is attributed to the "actual cost of pipe replacement," while the balance of the cost is attributed to "accessing pipe and restoring trench."[8] The plumber's estimate did not include floor covering repairs, restorations, or dry wall repairs.[9]

State Farm paid Mr. Boring $1,198.19 to replace a twenty to twenty-four feet of slab repair under its Endorsement but refused to pay for replacing the entire thirty-five to forty feet of slab repair in Mr. Boring's plumber's estimate.[10]

## II. Argument

Mr. Boring sued State Farm for breach of contract, statutory bad faith,[11] and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("Act").[12] He then filed two amended complaints repeating these claims alleging State Farm "unilaterally" reduced the amount of coverage it offered to him through the Endorsement, did not provide him with a choice of accepting or rejecting the Endorsement, and never provided him notice he may elect optional coverage removing the Endorsement from the Policy.[13] Mr. Boring alleges the Endorsement reduced "access" or "tear out" coverage by replacing "the cost of tearing out and replacing ***any part of the building necessary to repair the system or appliance***" with "the reasonable cost you incur to tear

3

out and replace *only that particular part of the building ... owned by you necessary to gain access to the specific point of that appliance from which the water or steam escaped.*"[14] He never alleges the term "access" is ambiguous. State Farm moves to dismiss each claim, essentially arguing Mr. Boring's acceptance of the Policy with the Endorsement precludes relief.[15]

### A. Mr. Boring cannot proceed on a contract claim by reading out the Endorsement.

State Farm moves to dismiss the breach of contract claim arguing (1) Mr. Boring concedes State Farm did not breach the Policy in effect on the date of the loss; (2) the reasonable expectation doctrine is inapplicable because the Endorsement is unambiguous; and (3) the Amended Complaint fails to state a claim for breach of the Policy even without the Endorsement.

To proceed on a breach of contract claim, Mr. Boring must allege "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract and (3) resultant damages"[16] Mr. Boring pleads these elements for a contract but not for a contract in this case. He does not plead these elements for the Policy in effect on the day of his loss.

#### 1. Mr. Boring concedes State Farm did not breach the Policy in effect on the date of loss.

State Farm argues Mr. Boring fails to state a claim for breach of contract. It argues Mr. Boring concedes State Farm did not breach the terms of the Policy in effect at the time of loss. State Farm characterized Mr. Boring's claim as "but for" the challenged endorsement, the Policy would have covered Mr. Boring's loss.

Mr. Boring pleads existence of a contract. An insurance policy is a contract.[17] But he ignores the contract terms. He argues the Endorsement is unconscionable. He wants us to read out the Endorsement. Under Pennsylvania law, the law of unconscionability is a defense, not a cause of action. Our Court of Appeals explains, "[u]nconscionability is a defense contractual remedy

4

which serves to relieve a party from an unfair contract or from an unfair portion of the contract."[18] Mr. Boring is not entitled to claim unconscionability as he is the party seeking enforcement of the Policy. The Endorsement is read into the Policy. We must interpret the Policy with the Endorsement.

Mr. Boring does not allege a breach of the Policy. He alleges State Farm would need to pay his plumber's full estimate if the Endorsement did not apply.[19] He may be right but this is a different case. The contract we must look to is the Policy with the Endorsement. Under the Policy, Mr. Boring does not allege State Farm breached as they reimbursed Mr. Boring under the Endorsement. He just did not get paid for the full amount he wanted under the original Policy.[20] Mr. Boring fails to state a claim for breach of contract.

In his Opposition to State Farm's motion to dismiss, Mr. Boring now argues an issue he elected to not allege in three successive complaints: the term "access" in the Endorsement is ambiguous and thus cannot be enforced against an insured on a motion to dismiss standard. We cannot guess as to how we would find "access" is ambiguous. Mr. Boring does not plead the Endorsement is ambiguous. We cannot add allegations to create a potential cause of action. If Mr. Boring has a good faith belief the term "access" in the Endorsement is unenforceable as ambiguous, he (and his counsel) needs to satisfy Rule 11 and, if warranted, assert this claim. We grant him leave to timely plead this claim if he can do so under Pennsylvania law.

### 2. The reasonable expectation doctrine is inapplicable.

Mr. Boring alleges the Policy is unenforceable as violating an insured's reasonable expectations. State Farm argues the reasonable expectation doctrine is inapplicable because the Endorsement is unambiguous.

5

Under the reasonable expectation doctrine, our Court of Appeals held "where ... an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy."[21]

Mr. Boring does not allege State Farm failed to inform him. He does not allege a surprise. Mr. Boring attached the Policy with the Endorsement to his First Amended Complaint.[22] He judicially admitted the Policy includes the Endorsement. The reasonable expectation doctrine does not apply to Mr. Boring given he admits receiving the Endorsement with the Policy.

### 3. Mr. Boring fails to state a claim for breach of the Policy even without the Endorsement.

Mr. Boring alleges "[u]nder the insurance policy issued before [the Endorsement], the entire bill would have been covered." Mr. Boring alleges nothing allowing us to infer a breach of contract assuming no Endorsement. We cannot ignore specific terms of a parties' bargain because the insured may not have fully read his Policy. We cannot distort "inference" into rank speculation to meet an insured's hopes.

### B. Mr. Boring fails to allege a bad faith claim.

Mr. Boring seeks interest on his unpaid claim, punitive damages and attorney fees under Pennsylvania's bad faith statute. He alleges State Farm's bad faith is: interpreting the Endorsement as reducing coverage; selling this Endorsement as additional coverage knowing it actually reduces coverage; misleading him as to coverage for access while never intending to cover all access charges; arbitrarily taking away coverage without a legal or factual basis; requiring him to file this case which should have been avoided; unreasonably withholding a benefit; and "acting unreasonably and unfairly" in responding to his claim.[23] Mr. Boring does not plead how State

6

Farm's response is unreasonable or unfair. He purchased the Policy with the Endorsement. In his Opposition, he argues State Farm's interpretation of the Endorsement is unfair.

State Farm moves to dismiss the bad faith claim arguing (1) Mr. Boring fails to state a plausible claim; (2) the bad faith claim fails because the breach of contract claim fails; (3) the bad faith statute does not extend to wrongful handling and denial of a claim for benefits and to conduct unrelated to the denial of a claim; and, (4) even if such conduct could support a claim under the bad faith statute, Mr. Boring fails to plausibly allege such a claim based on the language of the Endorsement.

The Pennsylvania General Assembly allows a court to remedy an insurer's bad faith conduct.[24] But the General Assembly did not define "bad faith." The Pennsylvania Superior Court defined two elements necessary to allege a bad faith claim: "(1) The insurer did not have a reasonable basis for denying benefits under the applicable insurance policy; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim."[25]

To eventually prove bad faith under § 8371, Mr. Boring must adduce clear and convincing evidence "(1) [State Farm] did not have a reasonable basis for denying benefits under the policy; and, (2) [State Farm] knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[26] Bad faith means a "frivolous or unfounded refusal to pay proceeds of a policy."[27] Mr. Boring can also base his bad faith claim on State Farm's failure to investigate his claim.[28] The Pennsylvania Supreme Court clarified Mr. Boring does not have to show State Farm had a "subjective motive of self-interest or ill-will" to prove a bad faith claim, although such evidence would be probative.[29] To prevail in his bad faith claim, Mr. Boring must allege State Farm (1) lacked a reasonable basis for denying underinsured motorist coverage; and (2) knew or recklessly disregarded its lack of a reasonable basis.[30] "Gross negligence or bad judgment is insufficient to

7

amount to bad faith."[31] Mr. Boring may plead bad faith based on State Farm's investigative practices "such as a lack of good faith investigation into facts, and failure to communicate."[32]

"Bad faith claims are fact specific and depend on the conduct of the insurer vis-a-vis the insured."[33] In *Smith v. State Farm*, our Court of Appeals affirmed dismissal of the insured's bad faith claim because the insured plead "conclusory statements unsupported by facts—State Farm, e.g., 'breach[ed] covenants of good faith and fair dealing,' [] and 'engaged in unfair settlement negotiations."[34] After the insured got into a car accident, the other driver's insurer tendered the $15,000 policy and the insured then sought the full extent of her $45,000 underinsured motorist benefits through her State Farm policy.[35] The insured's medical bills increased from $26,474 to almost $30,000 during ten months of communications with State Farm to resolve her claim.[36] The insured requested the policy limit multiple times but State Farm offered $21,000.[37] The insured sued after State Farm increased the offer to $32,225 in the tenth month of negotiations.[38] Our Court of Appeals found the complaint to be replete with broad and conclusory statements and factual content contradicted several of the insured's allegations.[39] Though the parties disagreed over the value of the claim, "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith."[40]

### 1. Mr. Boring does not plead a plausible bad faith claim.

Mr. Boring must plead denial of benefits under the applicable insurance policy, meaning State Farm breached the contract. The applicable insurance policy is the Policy with the Endorsement. He pleads denial of benefits under the Policy without the Endorsement[41] which is not relevant as we find no partial Policy. We cannot infer State Farm did not have a reasonable basis for denying benefits under the Policy; or State Farm knew or recklessly disregarded its lack of reasonable basis in denying the claim, when Mr. Boring alleges State Farm did not deny him

8

benefits under the Policy as written. If Mr. Boring can plead breach of contract based on ambiguity, he may also plead bad faith. But we remind him a breach of a contract obligation does not automatically equal statutory bad faith.

### 2. Pennsylvania's bad faith statute does not extend to conduct unrelated to the denial of a claim for benefits.

Bad faith claims do not remedy an insurer's allegedly insufficient performance of its contractual obligation or to indemnify losses.[42] Our Court of Appeals has affirmed "legislative intent. . . makes clear that the [bad faith] statute was intended specifically to cover the actions of insurance companies in the denial of benefits."[43] The General Assembly did not intend bad faith liability to extend to an insurer's solicitation of customers or to regulate insurance policies generally.[44] For example, Mr. Boring argues State Farm acted in bad faith when it bargained with Mr. Boring for his insurance plan. We cannot recognize a bad faith claim for actions unrelated to the handling or denial of benefits. Mr. Boring also fails to plead a single fact evidencing delay or unreasonable treatment of his claim other than a disagreement over whether the Endorsement should govern. We cannot locate a fact suggesting a frivolous or unfounded refusal to pay the insurance proceeds. Mr. Boring does not plead a lack of good faith investigation into the facts or a failure to communicate. Instead, we must disregard conclusory allegations unsupported by facts, including the catch-all "acting unreasonably and unfairly."

Mr. Boring fails to allege a bad faith claim.

### 3. Mr. Boring fails to plausibly allege a bad faith claim based on the language of the Endorsement.

Mr. Boring alleges State Farm "misrepresented" he had additional coverages, when State Farm took coverage away. State Farm attaches the Policy originally issued to Mr. Boring. The Policy includes the Endorsement. It is undisputed State Farm issued the Policy with the

9

Endorsement. Even if he were to plausibly plead the Endorsement is somehow ambiguous, we would need Mr. Boring to plead many more facts to allow a bad faith claim over a disagreement on how to interpret contract terms.

### C. Mr. Boring fails to allege State Farm violated the Unfair Trade Practice and Consumer Protection Law.

State Farm moves to dismiss Mr. Boring's Unfair Trade Practices Act claim arguing he (1) fails to plead the elements under the Act's "catch-all" provision requiring allegations of fraud to be pleaded with particularity; (2) fails to allege misfeasance required to support a claim under the Act; and (3) the economic loss doctrine bars any claim under the Act.

The Act prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices."[45] The statute provides a non-exhaustive list of specific prohibited acts.[46] The Pennsylvania Supreme Court instructs we "construe [the statute] liberally to effect its object of preventing unfair or deceptive practices."[47]

The Act allows for a private cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss . . ., as a result of the use or employment by any person of a method, act or practice declared unlawful."[48] The loss must be a result of the unlawful conduct so anyone "pursuing a claim under the statute must prove justifiable reliance" on the unlawful conduct.[49] The wrongful conduct cannot cause the injury.[50]

#### 1. Mr. Boring fails to plead the catch-all violation.

The Pennsylvania General Assembly added "deceptive conduct" to the catch-all provision, § 201-2(4)(xxi) of the Act, prohibiting "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[51] To survive State Farm's motion to dismiss, Mr. Boring must allege "he justifiably relied on the [d]efendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."[52]

10

State Farm argues Mr. Boring must allege elements of common law fraud. But, "[d]eception, which is very similar to fraud, is defined as 'intentional misleading by falsehood spoken or acted.'"[53] To claim deception under the catch-all provision, state of mind needs to be plead. In *Post v. Liberty Mutual Group, Inc.*, a homeowner alleged a violation of this catch-all provision when their insurer did not indemnify costs to repair water damage.[54] But an Act claim must fail where the homeowners did not plead a fact as to the insurer's state of mind.[55] Mr. Boring does not plead a fact regarding State Farm's state of mind. Mr. Boring's deception claim fails.

Like a common law fraud claim, the Act in section 201-2(4)(xxi) requires Mr. Boring to plead justifiable reliance. An insured "must at least allege facts from which plausible inferences of deceptive conduct and justifiable reliance thereon can be drawn."[56] Mr. Boring alleges he "justifiably relied upon the material misrepresentations made by [State Farm] concerning the nature and quality of the police of insurance issued by State Farm and, as a result of such reliance, suffered those damages and losses . . ."[57] Mr. Boring alleges, in conclusory language, he justifiably relied on the misrepresentations made by State Farm. There are no facts allowing us to leap to an inference between deceptive conduct and justifiable reliance. Mr. Boring fails to state a claim for reliance, an element of the catch-all provision of the Act.

### 2. Mr. Boring fails to allege misfeasance.

The Act affords a remedy for misfeasance, not nonfeasance.[58] Misfeasance is the improper performance of a contractual obligation, while nonfeasance is the failure to perform a contractual duty.[59] In *Gordan v. Pennsylvania Blue Shield*, an insured alleged their insurer refused to pay benefits to which the insured felt entitled.[60] The court held an insurer refusing to pay benefits to which an insured feels entitled is nonfeasance, not giving rise to a violation under the Act.[61]

11

State Farm argues Mr. Boring fails to allege misfeasance. He alleges State Farm refused to pay monies owed to him if we read out the terms of the Endorsement.⁶² Even assuming Mr. Boring can allege some ambiguity in the Endorsement, this claim would allege nonfeasance; we would need him to plead misfeasance to state a claim under the Act. Given his present judicial admissions, we would scrutinize a renewal of this theory based on State Farm's interpretation of an Endorsement included in the Policy.

## III. Conclusion

In the accompanying Order, we grant State Farm's motion to dismiss Mr. Boring's Second Amended Complaint. As he now appears to argue some presently unplead ambiguity, we grant him leave to timely amend for the fourth time to see if he can, consistent with Rule 11 obligations, plead a claim challenging the terms of the Endorsement as ambiguous.

---

¹ Second Amended Complaint at ¶ 5 (ECF Doc. 12). It appears Mr. Boring intended to attach the Policy to his Second Amended Complaint but failed to do so. He attached the Policy to his first amended complaint. State Farm attached the Policy to its motion to dismiss (ECF Doc. No. 13) and we will refer to the Policy filed by State Farm (ECF Doc. No. 13-3). Because Mr. Boring's claims are based upon the Policy, we may consider it when deciding State Farm's Motion *Borough of Moosic v. Darwin Nat'l Assur.*, 556 Fed. Appx. 92, 95 (3d Cir. 2014).

² ECF Doc. No. 13-3 at 18. We use the pagination assigned by the CM/ECF docketing system.

³ ECF Doc. No. 12 at ¶ 6; ECF Doc. No. 13-3 at 20 (emphasis added).

⁴ ECF Doc. No. 12 at ¶ 9. ECF Doc. No. 13-3 at 43 (emphasis added).

⁵ *Id.* at ¶¶ 15-17.

⁶ *Id.* at ¶ 17.

⁷ *Id.* at ¶¶ 19-20.

⁸ *Id.*

⁹ *Id.*

12

[10] *Id.* at ¶¶ 21-22.

[11] 42 Pa.C.S.A. § 8371.

[12] 73 Pa. Con. Stat. § 201-1.

[13] ECF Doc. No. 12 at ¶¶ 9, 11-13.

[14] *Id.* at ¶ 10 (emphasis added).

[15] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[16] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[17] *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002).

[18] *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

[19] ECF Doc. No. 12 at ¶ 23.

[20] *Id.* at ¶ 32.

[21] *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir.1994).

[22] ECF Doc. No. 7, p.21 *et seq.*

[23] ECF Doc. No. 12 at ¶ 43.

[24] 42 Pa.C.S.A § 8371: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer."

[25] *Terletsky v. Prudential Property*, 437 Pa. Super. 108, 125 (1994).

[26] *Rancosky v. Washington National Insurance Company*, 170 A.3d 364, 377 (Pa. 2017).

[27] *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)).

[28] *See Grossman v. Metropolitan Life Insurance Co.*, No. 17-2940, 2018 WL 347574, at *3 (Jan. 10, 2018) (citing *Rancosky v. Washington Nat. Ins. Co.*, 130 A.3d 79, 94 (Pa. Super. 2015), *aff'd Rancosky*, 170 A.3d 364 (Pa. 2017) ("Implicit inspection 8371 is the requirement that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to its insured.")).

[29] *Rancosky*, 170 A.3d at 377.

[30] *Dougherty v. Allstate Prop. & Cas. Ins. Co.*, 681 Fed. Appx. 112, 117 (3d Cir. 2017) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)).

[31] *Cont'l Cas. Co. v. Fleming Steel Co.*, 439 Fed. Appx. 134, 137 (3d Cir. 2011) (citation omitted).

[32] *Frantz v. Nationwide Ins. Co.*, No. 18-0509, 2018 WL 4207742, *4 (M.D. Pa. Sept. 4, 2018) (internal quotation marks and citations omitted).

[33] *Nationstar Mortg. LLC v. Radian Guar., Inc.*, No. 18-03798, 2019 WL 1318541, *5 (E.D. Pa. Mar. 22, 2019).

[34] *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 Fed. Appx. 133, 136 (3d Cir. 2012).

[35] *Id.* at 134.

[36] *Id.* at 134-35.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 136.

[40] *Id.* at 138.

[41] *Id.* ¶ 23.

[42] *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 198–200 (Pa. 2007).

[43] *Wise v. Am. Gen. Life Ins. Co.*, No. 02-3711, 2005 WL 670697 (E.D. Pa. Mar 22, 2005), aff'd, 459 F.3d 443 (3d Cir. 2006).

[44] *Id.*

[45] 73 Pa. Stat. Ann. § 201-3.

[46] *Id.* at § 201-2(4).

[47] *Creamer v. Monumental Properties Inc.*, 459 Pa. 450, 329 (1974).

[48] 73 Pa. Stat. Ann. § 201–9.2(a).

[49] *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir.2008).

[50] *Id.*

[51] 73 Pa. Stat. Ann. § 201–2(4)(xxi).

[52] *Johnson v. MetLife Bank, N.A.*, 883 F.Supp.2d 542, 548 (E.D.Pa.2012) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 438 (2004)).

[53] *Christopher v. First Mutual Corp.*, No. 5–149, 2006 WL 166566, at *4 (E.D. Pa. Jan.20, 2006) (quoting Black's Law Dictionary 406 (6th ed.1990)) (emphasis added).

[54] *Post v. Liberty Mut. Group, Inc.*, No. 14-238, 2014 WL 2777396, at *1 (E.D. Pa. June 18, 2014).

[55] *Id.* at *4.

[56] *Kemezis v. Matthews*, 394 Fed.Appx. 956, 959 (3d Cir. 2010) (affirming dismissal of Unfair Trade Practices claim because neither element sufficiently plead)

[57] ECF Doc. No. 12 ¶ 50.

[58] *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600, 604 (Pa.Super.Ct. 1988).

[59] *Horowitz v. Federal Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir.1995).

[60] *Id.*

[61] *Id.*

[62] ECF Doc. No. 12 ¶ 34.